**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                       :
                                                   :
                    Plaintiff,                     :     Civil Action No. 23-cv-05848
                                                   :
v.                                                 :     **COMPLAINT FOR VIOLATIONS OF**
                                                   :     **SECTIONS 14(a) AND 20(a) OF THE**
PDC ENERGY, INC., MARK E. ELLIS,                   :     **SECURITIES EXCHANGE ACT OF**
BARTON R. BROOKMAN, PAMELA R.                      :     **1934**
BUTCHER, PAUL J. KORUS, LYNN A.                    :
PETERSON, CARLOS A. SABATER, and                   :     **JURY TRIAL DEMANDED**
DIANA L. SANDS,                                    :
                                                   :
                    Defendants.                    :

--------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against PDC Energy, Inc. ("PDC Energy" or

the "Company") and the members of PDC Energy's board of directors (the "Board" or the

"Individual Defendants" and collectively with the Company, the "Defendants"), for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed merger between PDC Energy and Chevron Corporation

and affiliates ("Chevron").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4/A (the

"Registration Statement") to be filed on July 5, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Bronco Merger Sub, Inc., a direct wholly-owned subsidiary of Chevron, will merge with and into PDC, with PDC surviving as a direct wholly-owned subsidiary of Chevron (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 21, 2023 (the "Merger Agreement"), each PDC Energy stockholder will receive the right to receive 0.4638 shares of Chevron common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked PDC Energy's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to PDC Energy's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, an owner of PDC Energy shares and has held such shares since prior to the wrongs complained of herein.

10.     Individual Defendant Mark E. Ellis has served as a member of the Board since August 2017 and is the Chairman of the Board.

11.     Individual Defendant Barton R. Brookman has served as a member of the Board since January 2015 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Pamela R. Butcher has served as a member of the Board since February 2022.

13.     Individual Defendant Paul J. Korus has served as a member of the Board since January 2020.

14.     Individual Defendant Lynn A. Peterson has served as a member of the Board since January 2020.

15.     Individual Defendant Carlos A. Sabater has served as a member of the Board since May 2021.

16.     Individual Defendant Diana L. Sands has served as a member of the Board since February 2021.

17.     Defendant PDC Energy is a Delaware corporation and maintains its principal offices at 1099 18th Street, Suite 1500, Denver, Colorado 80202.  The Company's stock trades on the NASDAQ Global Select under the symbol "PDCE."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     PDC Energy is an independent exploration and production company that acquires, explores for, develops, and produces crude oil, natural gas, and natural gas liquids in the United States.  The Company's operations are primarily located in the Wattenberg Field in Colorado and the Delaware Basin in Texas.  The Company was formerly known as Petroleum Development Corporation and changed its name to PDC Energy, Inc. in June 2012.  PDC Energy was founded in 1969 and is headquartered in Denver, Colorado.

21.     On May 22, 2023, the Company and Chevron jointly announced the Proposed Transaction:

> SAN RAMON, Calif. and DENVER, Colo., May 22, 2023 – Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with PDC Energy, Inc. (NASDAQ: PDCE) to acquire all of the outstanding shares of PDC in an all-stock transaction valued at $6.3 billion, or $72 per share.

Based on Chevron's closing price on May 19, 2023 and under the terms of the agreement, PDC shareholders will receive 0.4638 shares of Chevron for each PDC share. The total enterprise value, including debt, of the transaction is $7.6 billion.

The acquisition of PDC provides Chevron with high-quality assets expected to deliver higher returns in lower carbon intensity basins in the United States. PDC brings strong free cash flow, low breakeven production and development opportunities adjacent to Chevron's position in the Denver-Julesburg (DJ) Basin, as well as additional acreage to Chevron's leading position in the Permian Basin.

"PDC's attractive and complementary assets strengthen Chevron's position in key U.S. production basins," said Chevron Chairman and CEO Mike Wirth. "This transaction is accretive to all important financial measures and enhances Chevron's objective to safely deliver higher returns and lower carbon. We look forward to welcoming PDC's team and shareholders to Chevron and continuing both companies' focus on safe and reliable operations."

"The combination with Chevron is a great opportunity for PDC to maximize value for our shareholders. It provides a global portfolio of best-in-class assets," said Bart Brookman, PDC President and CEO. "I look forward to blending our highly complementary organizations, and I'm excited that PDC's assets will help propel Chevron toward our shared goal for a lower carbon energy future."

**Transaction Benefits**

- Accretive to earnings per share, free cash flow and ROCE: Chevron anticipates the transaction to be accretive to all key financial measures within the first year after closing and to add about $1 billion in annual free cash flow at $70 per barrel Brent and $3.50 per Mcf Henry Hub (approximate 2024 futures prices as of May 2023).
- Strong strategic fit: Increases Chevron's proved reserves by 10% at an acquisition cost under $7 per barrel of oil equivalent (BOE).
- DJ Basin – 275,000 net acres adjacent to Chevron's existing operations that add over 1 billion BOE of proved reserves in highly economic locations and enable capital and operational synergies.
- Permian Basin – 25,000 net acres that are held by production and will be integrated into Chevron's existing capital efficient development operations.
- Capital and cost efficient:
- Capital expenditures – Chevron expects to increase capex by ~$1 billion per year, raising its guidance range to $14 to $16 billion

through 2027, after realizing about $400 million in capex efficiencies post-closing.

- Operational expenditures – the transaction is expected to achieve run-rate cost synergies of around $100 million before tax within a year of closing.

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's equity. In aggregate, upon closing of the transaction, Chevron will issue approximately 41 million shares of common stock. Total enterprise value of $7.6 billion includes net debt.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close by year-end 2023. The acquisition is subject to PDC shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of 14% on a 10-day average based on closing stock prices on May 19, 2023.

**Advisors**

Morgan Stanley & Co. LLC is acting as lead financial advisor to Chevron. Evercore also advised Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. J.P. Morgan Securities LLC is acting as lead financial advisor to PDC Energy and provided a fairness opinion to the Board of Directors. Wachtell, Lipton, Rosen & Katz and Davis Graham & Stubbs are jointly serving as the Company's legal counsel. PJT Partners also advised PDC Energy.[1]

\* \* \*

22.     The Board unanimously agreed to the Proposed Transaction.  It is therefore imperative that PDC Energy's stockholders are provided with the material information that has

---

[1] *Chevron Announces Agreement to Acquire PDC Energy*, CHEVRON (May 22, 2023), https://www.chevron.com/newsroom/2023/q2/chevron-announces-agreement-to-acquire-pdc-energy.

been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**      **The Materially Incomplete and Misleading Registration Statement**

23.      On July 5, 2023, PDC Energy and Chevron jointly filed Amendment No. 2 to the Registration Statement with the SEC in connection with the Proposed Transaction.   The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote on August 4, 2023 in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24.      The Registration Statement fails to provide material information concerning financial projections by management and relied upon by J.P. Morgan in its analyses.   The Registration Statement discloses management-prepared or management-approved financial projections for the Company that are materially misleading.  The Registration Statement indicates that in connection with the rendering of their fairness opinion, the management of PDC Energy prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and J.P. Morgan to aid them in forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and J.P. Morgan.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.

Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

25. For *PDC Energy Projections*, the Registration Statement provides values for the non-GAAP (Generally Accepted Accounting Principles) financial measure for fiscal years 2023 through 2031: EBITDAX, but fails to provide line items used to calculate this measure and/or a reconciliation of the non-GAAP measure to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Registration Statement that were relied upon by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

27. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[2]

28.     Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP measures included in the Registration Statement not misleading.

29.     In addition, the Registration Statement fails to provide detail of the computation of Unlevered Free Cash Flows for the Company.  The omission renders the Registration Statement false and misleading, as the Unlevered Free Cash Flows were prepared by Company management and delivered to J.P. Morgan for the purpose of conducting its *Discounted Cash Flow Analysis*.

30.     Further, the Registration Statement fails to disclose the projections for Chevron or for the combined company.  This information is material, as PDC Energy stockholders will receive Chevron shares as consideration for their PDC Energy stock and will become stockholders of the pro forma company.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31.     With respect to J.P. Morgan's *Selected Public Trading Multiples* analysis, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each company selected by J.P. Morgan for the analysis; and (ii) the basis for selecting the reference ranges of 2.50x—3.50x and 2.25x—3.25x for firm value to estimated 2023 and 2024 EBITDAX, respectively, and 1.75x—3.75x and 1.50x—3.50x for equity value to estimated 2023 and 2024 operating cash flow, respectively.

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

32.     With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis; and (ii) the basis for selecting the reference range for firm value to NTM EBITDAX of 2.50x—4.50x.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values for PDC Energy; (ii) the inputs and assumptions underlying the terminal EBITDAX multiple range of 2.00x to 3.00x; (iii) the inputs and assumptions underlying the discount rates ranging from 10.25% to 11.25%; and (iv) PDC Energy's weighted average cost of capital.

34.     With respect to J.P. Morgan's *Analyst Price Target* analysis, the Registration Statement fails to disclose: (i) the equity research analysts observed; and (ii) the corresponding price targets published by each equity research analyst.

35.     In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### <u>COUNT I</u>

**On Behalf of Plaintiff Against All Defendants for Violations of**
**Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending that the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement

upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of PDC Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of PDC Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of PDC Energy, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PDC Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Registration Statement.

46.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


DATED: July 7, 2023

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**

                                        /s/ *Benjamin Y. Kaufman*

Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4620
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*